**DATAPATH, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**L–3 Global Communications Solutions, Inc., Defendant–Intervenor.**

No. 09–188.

United States Court of Federal Claims.

May 29, 2009.*

George Wenick, Smith, Currie, & Hancock LLP, Atlanta, Georgia, for Plaintiff.

Kent Kiffner, United States Department of Justice, Washington, D.C., for Defendant. Captain Lisa Satterfield, United States Army, Judge Advocate, Arlington, Virginia, Counsel.

Kristen Ittig, Arnold & Porter LLP, Washington, D.C., for Defendant–Intervenor.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

On March 27, 2009, DataPath, Inc. ("Data-Path") filed a pre-award bid protest to challenge a March 23, 2009 Solicitation No. W91QUZ–09–R–0008 ("the Solicitation"), issued by the United States Army ("Army") to procure 970 satellite communication terminals that "would become part of a satellite communications system [providing] world-wide data and voice communication connectivity to the United States military forces." Compl. ¶ 1.[1] The crux of DataPath's protest

---

* On May 15, 2009, a pre-publication draft of this Memorandum Opinion and Final Order was provided to the parties, under seal. The parties were instructed to propose any redactions on or before May 18, 2009.

1. The facts discussed herein were derived from: DataPath's March 27, 2009 Complaint ("Compl."); a two-volume Administrative Record, filed on April 10, 2009 ("AR 1–2000"); and

is that the Solicitation unlawfully was limited only to Combat Service and Support ("CSS") Very Small Aperture Terminal ("VSAT")s manufactured by L–3 Global Communications Solutions, Inc. ("L–3 Global"), instead of requiring a full open and competitive procurement, as required by the Competition in Contracting Act, 10 U.S.C. § 2304. In addition, DataPath argues the Solicitation failed to justify why this procurement must be exclusively limited to a designated brand-name terminal in violation of the Administrative Procedure Act, 5 U.S.C. § 706 ("APA").

## I. RELEVANT FACTS.

### A. Since 2004, The Army Has Purchased Combat Service And Support Very Small Aperture Terminals.

In 2004, the Army's Product Manager Defense Wide Transmission Systems ("PM DWTS") established a network to connect Army logisticians through CSS Satellite Communications that included VSATs, because the Army's "ability to execute expeditionary logistics" requires "accurate, shared data, accessed via global communications." AR at 4. The VSAT selected was a 1.2–meter Ku–Band satellite communications terminal manufactured by L–3 Global, known as the Hawkeye IIE. *Id.* Although DataPath competed for this contract, it did not file a protest when L–3 Global received the initial award. *See* 5/13/09 TR at 5–6.

Since 2004, PM DWTS has purchased 2,436 of 3,300 VSATs authorized. *See* AR at 5. As of December 31, 2008, 1,917 VSATs have been fielded to tactical and logistics units, located primarily in Kuwait, Iraq, and Afghanistan. *Id.*

### B. The August 11, 2008 Solicitation No. W15P7T–08–R–H418.

On August 11, 2008, the Army issued Solicitation No. W15P7T–08–R–H418 to purchase additional VSATs of the same "class" as the Hawkeye IIE through a competitive procurement under a multiple award Indefinite Delivery/Indefinite Quantity contract. *See* AR at 213. The Solicitation provided that the award be based on:

the best overall (*i.e.,* best value) proposal that is determined to be the most beneficial to the government, with appropriate consideration given to three Evaluation Factors: Technical, Production Readiness, and Price. The Technical Factor is more important that the Production Readiness Factor. The Production Readiness Factor is more important than the Price Factor. When combined, the non-Price factors are significantly more important than the Price Factor. Offerors are cautioned that the award may not necessarily be made to the lowest price Offeror. To receive consideration for award, a rating of no less than "Acceptable" must be achieved in the Technical Factor, all Technical Subfactors, and the Production Readiness Factor.

Compl. ¶ 10.

In response, the Army received five proposals, including one from DataPath. *Id.* ¶ 11; *see also* AR at 11. On September 24, 2008, the Army issued Initial Technical Factor Reports analyzing each proposal. *See* AR at 1828–1941. Both the DataPath terminal and the Hawkeye IIE terminal were rated as "Susceptible to Being Made Acceptable." *Id.* at 1828–29, 1854–55. On September 29, 2008, the Army issued Final Technical Factor Reports, rating both the DataPath and the Hawkeye terminals as "Good." *Id.* at 1816–27. On October 21, 2008, the Army issued Interim Technical Factor Reports for all offerors. *Id.* at 1955–96.

On October 30, 2008, the Army decided to cancel the August 11, 2008 Solicitation No. W 15P7T–08–R–H418. *Id.* at 1708.

### C. The March 17, 2009 Justification And Approval For Support Of "New Contract Action" For A Brand-Name Hawkeye IIE CSS VSAT.

On March 17, 2009, the day before the existing contract was set to expire, the Army issued a Justification and Approval ("J & A"), pursuant to 10 U.S.C. § 2304(c)(1) and FAR 6.302–1(c), to support a "new contract action" authorizing the purchase of brand-name only Hawkeye IIE CSS VSATs for sixteen months. AR at 1. The J & A stated

the May 13, 2009 Oral Argument ("5/13/09 TR 1–       61").

that this is a "commercial item, firm-fixed price type contract[.]" *Id.* The "anticipated contract price of the proposed action is $56.1 [million]." *Id.* In addition, the J & A provided that the contract was a "competitive small business set-aside among all authorized third party resellers." *Id.* The cover sheet of the J & A explained that: "the action is being acquired as a brand-name item[,] because all fielded VSAT terminals are Hawkeye IIE. Introduction of a different terminal solution would result in [ ] additional ... costs as specifically delineated in the J & A, as well as severely impact support to the warfighter." *Id.* In estimating the additional cost to procure a different terminal, the J & A stated that it relied on data "derived from the historical procurement data from 2007 and 2008, in addition to the recent cancelled procurement effort [Solicitation No. W15P7T–08–R–H418]." *Id.* at 8.

### D. The March 23, 2009 Solicitation No. W91QUZ–09–R–0008.

On March 23, 2009, the Army issued Solicitation No. W91QUZ–09–R–0008, requesting proposals for 970 L–3 Global Hawkeye IIE CSS VSATs, no later than March 30, 2009. *See* AR at 99, 104. The Solicitation specified that "[n]o other brand-names will be considered or accepted." *Id.* The Solicitation was designated as a small business set-aside. *Id.* Delivery of the brand-name units was required "to begin 16 weeks after contract award and each month until all 970 L–3 Global Hawkeye IIE CSS VSAT units are delivered" for a total of eighty-five terminals per month. *Id.* at 106. The evaluation criteria consisted of two factors: Technical Acceptably and Price. *Id.* at 107. The award was to be made to the "offeror who satisfies the Government's minimum technical acceptability criteria and proposes the lowest total evaluated price." *Id.* at 108.

## II. PROCEDURAL HISTORY.

On March 27, 2009, DataPath filed a Verified Complaint and Petition For Injunctive Relief, under seal, in the United States Court of Federal Claims to protest the issuance of the March 23, 2009 Solicitation No. W91QUZ–09–R–0008, together with a Motion

For A Protective Order and Disclosure Statement. On March 30, 2009, DataPath filed a Memorandum In Support of the March 27, 2009 Petition For Injunctive Relief. On March 30, 2009, the court convened a telephone conference to hear argument on DataPath's March 27, 2009 Petition. Thereafter, the court entered a Memorandum Opinion And Temporary Restraining Order ("TRO"), to enjoin the award of a contract on Solicitation No. W91QUZ–09–R–0008, and set a bond of $2.7 million. On April 1, 2009, the court entered DataPath's requested Protective Order and convened a telephone conference to discuss payment of the bond and scheduling matters.

On April 7, 2009, L–3 Global filed an Unopposed Motion To Intervene and a Motion For Access To Information, subject to the April 1, 2009 Protective Order. On that same date, the court issued an Order granting L–3 Global's Motion To Intervene, pursuant to RCFC 24(a)(2), and L–3 Global's Motion For Access To Information, subject to the April 1, 2009 Protective Order. On that date, the court also issued a Scheduling Order and an Order extending the TRO until June 1, 2009. On April 10, 2009, the Government filed the Administrative Record, under seal. On April 13, 2009, DataPath filed a Motion To Modify Bond Amount. On April 13, 2009, L–3 Global filed a Motion Requesting Clarification Of The Scope Of The Injunctive Order.

On April 13, 2009, DataPath also filed a Motion To Supplement The Administrative Record, with all the historical procurement data that the Army relied on in preparing the March 17, 2009 J & A. Specifically, DataPath requested that the record be supplemented with prior procurement data relied upon by the J & A.

On April 14, 2009, the court convened a telephone conference to discuss DataPath's request to reduce or eliminate the bond and the Government's request immediately to procure 127 Hawkeye IIE VSATs. On the same day, the court entered a Consent Order, allowing the Army to acquire these terminals prior to the expiration of the TRO. Since DataPath agreed not to object to this request, the court waived DataPath's bond.

On April 14, 2009, the Government also filed a Response to DataPath's April 13, 2009 Motion To Supplement The Administrative Record. On April 15, 2009, DataPath filed a Reply. On April 15, 2009, the court convened a telephone conference to hear argument on Plaintiff's April 13, 2009 Motion To Supplement The Administrative Record, but declined to rule on the motion.

On April 17, 2009, DataPath, the Government, and L–3 Global, each filed a Motion For Judgment On The Administrative Record. On April 28, 2009, each party filed a Response. On May 8, 2009, each party filed a Reply.

On May 13, 2009, the court held oral argument on the April 17, 2009 Motions For Judgment On The Administrative Record and afterwards held a telephone conference with all counsel of record. *See* 5/13/09 TR 1–61. On May 15, 2009, the court issued an Order dissolving the March 30, 2009 TRO, as modified by the *court's Orders of April 7*, 2009 and April 14, 2009.

## III.  JURISDICTION.

■ The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, §§ 12(a), (b), 110 Stat. 3870 (Jan. 3, 1996), codified at 28 U.S.C. § 1491(b) ("ADRA"), authorized the United States Court of Federal Claims to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); *see also Banknote Corp. of Am., Inc. v. United States,* 365 F.3d 1345, 1350 (Fed.Cir.2004) ("The [United States] Court of Federal Claims has jurisdiction to review both pre-award and post-award bid protests pursuant to 28 U.S.C. § 1491(b), enacted as part of the Administrative Dispute Resolution Act of 1996[.]").

The March 27, 2009 pre-award bid protest Complaint in this case alleges that the Army violated 10 U.S.C. § 2304 and FAR 6.302–1, as well as the APA, in the issuance of Solicitation No. W91QUZ–09–R–0008. *See* Compl. ¶¶ 35, 36. Accordingly, the March 27, 2009 Complaint recites a sufficient basis for the court to exercise jurisdiction, pursuant to 28 U.S.C. § 1491(b)(1). *See Distributed Solutions, Inc. v. United States,* 539 F.3d 1340, 1346 (Fed.Cir.2008) (holding that "[t]o establish jurisdiction [under 28 U.S.C. § 1491(b) ] ... the contractors must demonstrate that the government at least initiated a procurement[.]"); *see also Galen Medical Assocs., Inc. v. United States,* 369 F.3d 1324, 1328 (Fed.Cir.2004) ("[T]he Court of Federal Claims has jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.") (internal quotation omitted).

## IV.  DISCUSSION.

After this bid protest was filed on March 27, 2009, three relevant events occurred.

First, on April 1, 2009, Rockwell Collins, Inc. announced an intent to acquire Data-Path, with the closing expected to be completed in forty-five days. *See* April 28, 2009 Gov't Ex. 1. Consequently, the Government now has challenged DataPath's standing to protest the March 23, 2009 Solicitation, as a "small business" set-aside. DataPath responds that the designation of this procurement as a "small business" set-aside is unlawful, since L–3 Global is the real party at interest, as evident by the April 7, 2009 intervention. If the "small business" set-aside is unlawful, DataPath has standing to challenge whether the Government violated the Competition in Contracting Act, 10 U.S.C. § 2304(d)(1)(B).[2]

---

**2.** Section 2304(d)(1)(B) of the Competition in Contracting Act provides that:

> [P]roperty ... may be deemed to be available only from the original source and may be procured through procedures other than competi-

tive procedures when it is likely that award to a source other than the original sources would result in—

Second, on May 4, 2009, the United States Court of Appeals for the Federal Circuit reversed a February 26, 2008 Memorandum Opinion and Final Order, entered in COFC No. 07–532, holding that "supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review." *Axiom Res. Mgmt. v. United States*, 564 F.3d 1374, 1379 (Fed.Cir.2009) (internal quotation omitted). In this case, the Government requested that the court supplement the Administrative Record, the exact opposite of the position taken by the Government in *Axiom*.[3]

█ Third, and most important, the military initiative in Afghanistan dramatically has escalated. As the *New York Times* observed recently: "Afghanistan is to be President Obama's war, and the Pentagon is retooling its efforts here in ways it hopes will undermine a sprawling insurgency." C.J. Chivers, *In Bleak Afghan Outpost, Troops Slog On*, N.Y. TIMES, May 14, 2009, at A6.

Congress has recognized that, under certain circumstances, a protestor's right to contest a government procurement must give way. Accordingly, in adjudicating bid protests the United States Court of Federal

(i) substantial duplication of cost to the United States which is not expected to be recovered through competition; or
(ii) unacceptable delays in fulfilling the agency's needs.
10 U.S.C. § 2304(d)(1)(B); *see also* FAR 6.302–1(a)(2)(ii).

3. It appears that the *Axiom* panel was not informed that the February 26, 2008 injunction at issue was moot, as of June 18, 2008, the date the Government abandoned the contract at issue in COFC No. 07–532 with Lockheed Martin Federal Healthcare, Inc. and instead awarded a contract, under a entirely different procurement vehicle, known as the TPOD/OGS, to Lockheed Martin Services, Inc., a related company. Therefore, on November 10, 2008, when the Government filed an appeal in *Axiom*, the injunction entered in COFC No. 07–532 was and had been moot since June 18, 2008. *See Myers Investigative and Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed.Cir.2002) (Government argued case was moot "because the contracts at issue have expired."); *see also Delta Pac. Group, Inc. v. United States*, 73 F.3d 378, 1995 WL 723923 (Fed.Cir. 1995) (unpublished) (granting the Government's motion to dismiss an appeal of a solicitation cancelled prior to appeal as moot). For this reason, Axiom filed a Second Amended Com-

Claims must "give due regard to the interests of national defense and national security and the need for expeditious resolution of the action." 28 U.S.C. § 1491(b)(3).

The Government has represented in this case that the need to purchase the Hawkeye IIE CSS VSATs at issue is urgent to support the military in Afghanistan, as well as Iraq. *See* 5/13/09 TR 50–51. Therefore, regardless of the merits of DataPath's claims, the court could not in good faith enjoin the Army from procuring this equipment. *See eBay Inc. v. MercExchange, L.L. C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must ... demonstrate ... that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and ... *the public interest would not be disserved by a permanent injunction*.") (emphasis added). Accordingly—in this case and at this time—the court has determined that the interests of open and fair competition do not outweigh the interests of national defense and security.

Competition, however, should not be a secondary consideration in government procurement.[4] For this reason, on May 26, 2009,

plaint in the United States Court of Federal Claims, on January 13, 2008, in a different action, COFC No. 08–487, to protest this new procurement. On July 18, 2008, however, Plaintiff filed a Notice of Voluntary Dismissal in COFC No. 08–487, and that case also was dismissed.

The *Axiom* panel also may have misunderstood that the trial court did not "supplement" the Administrative Record, because RCFC Appendix C, ¶ 22(u) provides that declarations filed in a prior protest before the General Accountability Office are part of the Administrative Record. *See* RCFC Appendix C, ¶ 22(u) (The core documents relevant to a bid protest may include: "the record of *any previous administrative* or judicial *proceedings relating to the procurement, including the record of any other protest of the procurement*.") (emphasis added); *see also Holloway & Co., PLLC v. United States*, —— Fed.Cl. ——, 2009 WL 1351413, at *9 (May 14, 2009) ("RCFC Appendix C, ¶ 22(u) consequently serves the statutory purpose of ensuring that the full record of all proceedings related to the procurement is before the court for review[.]").

4. A recent Audit Report of this *one* Department of Defense program highlights the importance and need for competition in government con-

Congress unanimously endorsed and President Obama signed the Weapon Systems Acquisition Reform Act of 2009 (S.454) to require that the Secretary of Defense ensure that the acquisition strategy for each major defense acquisition program includes measures to guarantee competition at both the prime contract level and subcontract level. Therefore, in the future, hopefully the issues presented by this bid protest will not arise.

For these reasons,[5] the Government's April 17, 2009 Motion For Judgment On The Administrative Record and L–3 Global's April 17, 2009 Motion For Judgment On The Administrative Record are both granted. DataPath's April 17, 2009 Motion For Judgment On The Administrative Record is denied. The March 27, 2009 Verified Complaint is dismissed, without prejudice to DataPath filing related and such other bid protests in the future that it deems to be well-founded.

**IT IS SO ORDERED.**

tracts, in general, and underscores the relevance of open competition as one of the bases for this protest. See May 6, 2009 REPORT NO D, INSPECTOR GENERAL, UNITED STATES DEPARTMENT OF DEFENSE, 2009–082 (Project No. D2008–D000AS–0085.000) at 4. ("Of the 133 task orders valued at $2.1 billion that we reviewed, 39 valued at $469.3 million were not awarded based on adequate competition … [Competition was restricted in part because the program manager] deviated from the FAR by not ensuring contracting officers performed adequate market research on small business set-aside task order contracts.").

5. Recognizing that the court has authority to award bid preparation and proposal costs, in the event DataPath prevailed in this protest, following oral argument, L–3 Global, the incumbent contractor and primary beneficiary of this contested Solicitation, agreed to the court's request to reimburse DataPath for certain costs incurred to date. Since the issues raised by this bid protest are complex and were well presented by DataPath's counsel, this accommodation by L–3 Global is appropriate, as it serves the interest of an "expeditious resolution of the action." 28 U.S.C. § 1491(b)(3).