**ESKRIDGE RESEARCH CORPORATION,**
Plaintiff,

v.

**The UNITED STATES, Defendant,**

**Bowhead Science and Technology, LLC, Defendant–Intervenor.**

No. 10–50C.

United States Court of Federal Claims.

March 26, 2010*.

* Order originally filed under seal on March 12, 2010.

Geoffrey Martin Bohn, Arlington, VA, for plaintiff.

Scott MacGriff, U.S. Department of Justice, Washington, DC, with whom were Tony West, Assistant Attorney General, and Jeanne E. Davidson, Director, for defendant.

William P. Horn, Washington, DC, for Defendant–Intervenor Bowhead Science and Technology.

**ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

NANCY B. FIRESTONE, Judge.

Pending before the court in this bid protest action filed under 28 U.S.C. § 1491(b) (2006) is the motion for a preliminary injunc-

tion filed by the plaintiff, Eskridge Research Corporation ("plaintiff" or "ERC") and the motion by the defendant ("government") to dismiss certain of the plaintiff's claims for lack of jurisdiction. At issue is a contract to provide force protection operational support services (Solicitation No. W912HQ–09–R–0009) awarded by the U.S. Army Corps of Engineers ("USACE") to the intervenor, Bowhead Science and Technology, LLC ("Bowhead"), on September 25, 2009. ERC had been providing these services under a prior contract (No. W912HQ–08–P–0081) that expired in September 2009. Bowhead began performance on September 30, 2009.

## BACKGROUND FACTS

Following the award of the contract to Bowhead on September 25, 2009, ERC requested and received post-award debriefings from USACE, which occurred on October 5 and 15, 2009. Based on concerns raised during the October 15 debriefing, ERC filed a protest with the Government Accountability Office ("GAO") on October 23, 2009. ERC alleged in its GAO protest that the technical evaluation was inconsistent with the proposal and stated criteria, the evaluation of ERC's past performance was flawed, the price analysis was flawed, there was impermissible dis-

parate treatment in the evaluation, the best value determination deviated from stated evaluation criteria, and the agency improperly modified the contract, suggesting the improper creation of a sole-source contract.[1] Because ERC did not file its protest in time to secure an automatic stay of contract performance,[2] Bowhead has continued to provide force protection services to USACE since September 30, 2009. ERC alleges that twelve of ERC's former employees joined Bowhead after it won the contract award. ERC objects to Bowhead's decision to hire its former employees.

On November 24, 2009, USACE filed a notice of Corrective Action in response to ERC's objections to the procurement before the GAO. In the Corrective Action notice, USACE agreed to reevaluate the technical proposals for offerors that had been part of the competitive range, including ERC.[3] In the same notice, USACE stated that Bowhead would continue contract performance during the corrective action process in order to provide needed security. In support, the notice stated:

The Agency has determined to continue contract performance with Bowhead for force protection, anti-terrorism and securi-

1. ERC based this claim on the fact that there was a difference between the contract synopsis prior to award and after award. The contract synopsis before award read as follows:

Provide critically needed Protection support the USACE Headquarters, Divisions, and Centers. The Contractor['[]s personnel must be capable of providing a broad range of analysis and assessments; quick response research and studies; and other technical and administrative services. The contractor shall provide services related to tasks ranging from decision-making support and resource analysis to developing Protection concepts, strategies, and policies, plans, methods, procedures, and checklists. Contractor will analyze and evaluate current Protection Program; identify shortfalls in the Protection Program; develop possible solutions and action plans based on Protection doctrine, strategic and policy guidance. The solicitation will be posted on or about 1 July 2009.

Compl. ¶ 17. After award, on September 26, the synopsis was dramatically shortened to read:

Provide critically needed Protection support to USACE Headquarters, Divisions, and Centers. The Contractors will analyze and evaluate current Protection Program Services.

Compl. ¶ 18. The contract itself, however, is apparently unchanged.

2. Under 31 U.S.C. § 3553(d)(3)(A) and § 3553(d)(4) (2006), if the agency receives notice of a protest within ten days after the contract award or five days after a debriefing, the Contracting Officer ("CO") may not authorize performance of the contract while the protest is pending.

3. The notice stated:

The Agency has determined that it is necessary to take corrective action concerning the subject protest in the interest of promoting the competitive process. The Agency intends to implement the corrective action by reevaluating the technical proposals within the competitive range. If needed, negotiations will be conducted, and offerors will be provided with an opportunity to submit revised proposals. After the conclusion of the technical evaluation and subsequent trade-off analysis, the Contracting Officer will then determine if a new award is warranted.

Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. ("Def.'s Resp.") App. 220.

ty services while taking corrective action. There is a threat to safety if contract work is suspended[,] which could leave the Agency in a vulnerable position to harmful threats on security. Without the continued and uninterrupted support of the current contract, the Agency's antiterrorism programs will be at mission failure because the Agency will not be able to prevent and defend against threats.

Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. ("Def.'s Resp.") App. 220.[4] On November 24, 2009, the GAO dismissed ERC's protest as "academic."

Subsequent to its failed GAO protest, ERC filed an initial bid protest action in this court on December 22, 2009. That action was voluntarily dismissed on December 23, 2009. The present bid protest action and accompanying motion for preliminary injunctive relief were filed on January 25, 2010. In the present action, ERC alleges in Count I of the complaint that USACE's initial evaluation of ERC's proposal and award of the contract to Bowhead were unreasonable. Compl. ¶¶ 51–55. Count II alleges a violation of the Competition in Contracting Act ("OCA") resulting from USACE's claimed change in the contract from the solicitation based on the change in the "synopsis" (*see* n.1 *supra*) and potentially allowing Bowhead to submit a modified proposal that includes former ERC personnel during the re-evaluation of proposals. Compl. ¶¶ 56–61. ERC seeks relief in the form of a declaration that the original evaluations and contract award

were improper and a preliminary and permanent injunction requiring USACE to suspend or terminate the contract award to Bowhead, reinstate ERC's now-expired contract, and "compel the return of ERC's employees from Bowhead." Compl. ¶ 62.

In response, the government argues that the court should dismiss ERC's claims regarding the award and alleged change to the Bowhead contract as moot because of the USACE decision to undertake corrective action. The government argues that ERC's claims regarding USACE's pending corrective action or re-evaluation process must be dismissed because they are not ripe. The government asserts that ERC's claim regarding Bowhead's decision to hire former ERC employees is outside this court's jurisdiction and must be dismissed. Finally, the government argues that ERC's claims regarding USACE's decision to keep Bowhead in place during the corrective action process are not likely to succeed on the merits and that the equities favor retaining Bowhead during this period. Therefore, the government concludes, ERC's request for preliminary injunctive relief should be denied.

## DISCUSSION

### I. The Government's Motion to Dismiss[5]

#### A. *Claims Regarding USACE's Original Contract Award are Moot.*

 As stated above, this case comes to the Court of Federal Claims following USACE's November 24, 2009 decision to re-evaluate proposals in the competitive range

---

**4.** This notice was supported by a memorandum from the CO for the contract at issue, which explained her conclusion that issuing an interim contract during the period of corrective action was not a viable option. The memorandum from the CO to the Commander of USACE reveals that the CO "seriously considered the option of issuing a purchase order to an 8(a) contractor, rather than continuing performance of the work under the current contract...." Def.'s Resp.App. 222. The memorandum further explains that the CO's decision not to pursue this option followed advice from USACE Command Provost Marshall in the Office of Homeland Security, Jerry Boerste ("Mr. Boerste"):

> With regard to the purchase order option, the Contracting Officer has considered the fact that it would take approximately seven (7) to ten (10) days before a purchase order could be awarded to perform the contract work until

the corrective action is completed.... [T]he Contracting Officer has been advised by Mr. Boerste that there could be potentially serious consequences if contract work is suspended for even a week to ten (10) days. *Id.* at 222–23. Mr. Boerste stated that " * * * * " *Id.* at 223. The CO's memorandum further indicates that she had been advised that " * * * * " *Id.*

**5.** The standards for review of a motion to dismiss for lack of jurisdiction are well-settled. The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds v. Army & Air Force Exchange Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). Because jurisdiction is a threshold matter, a case can proceed no further

for the contract at issue. That corrective action is nearly complete.[6] The plaintiff in its complaint reiterates the claims it made in its bid protest before the GAO that was dismissed in November 2009 following the agency's decision to take corrective action. The plaintiff has not challenged the decision to undertake corrective action. In such circumstances, the government argues, ERC's claims regarding the original award to Bowhead are moot. The court agrees.

■ It is well established that "[w]hen, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should generally be dismissed." *Chapman Law Firm Co. v. Greenleaf Constr. Co.,* 490 F.3d 934, 939 (Fed.Cir.2007). Indeed, it is this rationale that led the GAO to dismiss the plaintiff's protest, stating "[s]ubsequent to the filing of this protest, the agency granted the relief requested, which rendered the protest academic.... It is not our practice to consider academic questions." Def.'s Resp.App. 233. In such circumstances, the plaintiff's challenges to USACE's original evaluation of proposals are not properly before this court, as the relief that would otherwise be available has already been granted due to the agency's decision to re-evaluate the proposals. Therefore, because the agency has already agreed to re-evaluate the proposals, the plaintiff's claims regarding USACE's original evaluation of proposals and its award of the contract to Bowhead must be dismissed as moot.[7]

B. *Claims regarding the Process of and Potential Outcome of USACE's Corrective Action are Not Ripe.*

■ The government has also moved to dismiss ERC's claims regarding speculative

and potential improprieties in the re-evaluation process on the ground that without evidence of any actual wrongdoing by USACE, any error in the corrective action process will not be ripe for judicial review until a new decision is issued. The court agrees with the government.

■ The ripeness doctrine works to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). "A claim is not ripe where it rests upon 'contingent future events that may not occur as anticipated; or indeed may not occur at all.'" *Tex. Bio & Agro–Defense Consortium v. United States,* 87 Fed.Cl. 798, 804 (2009) (quoting *Thomas v. Union Carbide,* 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)) (internal quotation marks removed) (where agency had not yet made a final decision regarding a land transfer agreement, the site selection decision was not yet fit for judicial review); *see also Fina Oil & Chem. Co. v. Ewen,* 123 F.3d 1466, 1470 (Fed.Cir.1997) (declaratory relief is available "only when the situation has progressed to an actual controversy, as required by Article III of the Constitution.").

As stated above, USACE has begun to take corrective action. The government's counsel has represented that USACE antici-

---

6. Government counsel represented at oral argument on March 10, 2010 that a new contract award decision was expected within 45–60 days.

7. This includes the plaintiff's claim that modification of the contract synopsis led the agency to relax the proposal requirements in order to award the contract to Bowhead. The present contract with Bowhead is now the subject of corrective action and objections to that contract are moot.

if a court lacks jurisdiction to hear it. *See Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (citation omitted)); *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). *See generally John R. Sand & Gravel v. United States,* 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591(2008).

pates making a final award within 45 to 60 days. If at the end of that process the record shows that USACE did not properly carry out the corrective action by conducting a proper re-evaluation of proposals, ERC will have an opportunity to challenge the decision after it is made. In the meantime, ERC has not pled any facts to suggest that USACE is not properly performing the technical re-evaluation.

The court is "required to assume that the Government [will] carry out the corrective action in good faith." [8] *Chapman Law Firm,* 490 F.3d at 940 (citing *T & M Distribs., Inc. v. United States,* 185 F.3d 1279, 1285 (Fed. Cir.1999) ("Government officials are presumed to act in good faith, and it requires well-nigh irrefragable proof to induce a court to abandon the presumption of good faith" (internal quotation marks removed))); *see also Axiom Res. Mgmt., Inc. v. United States,* 564 F.3d 1374, 1384 (Fed.Cir.2009). Challenges to the outcome of that action at this time are thus not fit for judicial review. For this reason, ERC's claims related to the outcome of this ongoing corrective action must be dismissed as not ripe for judicial review.

### C. Claims Regarding Bowhead's Hiring of ERC's Former Employees are Beyond this Court's Jurisdiction.

██ The government argues that to the extent the plaintiff is seeking to have this court set aside Bowhead's decision to hire ERC's former employees this court does not have jurisdiction to hear the claim. Again, the court agrees with the government.

██ This court does not have jurisdiction to adjudicate a dispute between ERC and Bowhead, nor to compel Bowhead to "return ... ERC's employees." Compl. ¶ 62. "The United States is the only proper defendant before the Court of Federal Claims." *Howard v. United States,* 230 Fed.Appx. 975, 976 (Fed.Cir.2007) (citing *United States v. Sherwood,* 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ("if the relief sought [in the Court of Federal Claims] is against others than the United States the suit as to

them must be ignored as beyond the jurisdiction of the court")); *see also McGrath v. United States,* 85 Fed.Cl. 769, 772 (2009); *Applications Research Corp.,* Comp. Gen. Dec. B–230097, 88–1 C.P.D. ¶ 499, 1988 WL 227169 (May 25, 1988) (whether a new contractor's hiring an incumbent contractor's employees was grounds for a civil action between those contractors was not a proper subject for a protest). Thus, this court may not order Bowhead to "return ... ERC's employees," as the plaintiff asks. To the extent ERC's claims depend on this requested relief, they must be dismissed.

### D. Claims Relating to USACE's Decision to Retain Bowhead During the Corrective Action Period.

██ In contrast to the plaintiff's other claims, the court finds, and the government does not contest, that the court has jurisdiction to consider ERC's objection to the USACE Contracting Officer's ("CO") decision to retain Bowhead's services during the re-evaluation process.

██ This court has jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Thus, it can hear objections to actions taken in connection with a procurement, including the decision to continue to accept Bowhead's services while USACE re-evaluates the award decision. Under the Federal Acquisition Regulations, for contracts having a total value of less than $3.5 million, the CO has discretion as to whether to award the contract on the basis of competition or whether the agency may make a sole-source award. 13 C.F.R. § 124.506 (2009); 48 C.F.R. § 19.805–1 (2009). Because the total value of this contract fell below that threshold, the CO had the discretion to terminate the Bowhead contract and award a separate sole source con-

---

**8.** Further, counsel for the plaintiff has not asserted any facts that might lead the court to conclude that the agency is acting with anything other than good faith.

tract during the re-evaluation process. Whether the CO abused her discretion in retaining Bowhead's services is a matter the court can review.[9] Therefore the court will now proceed to consider ERC's motion for a preliminary injunction based on this remaining claim.

## II. Standards for Issuance of Preliminary Injunction

In conjunction with its jurisdiction to claims related to procurement decisions, the Court of Federal Claims may "award any relief that the court considers proper, including ... injunctive relief." 28 U.S.C. § 1491(b)(2). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (emphasis omitted) (citation omitted); *see also St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 768–69 (Fed.Cir.1993) (plaintiff must demonstrate by clear and convincing evidence that it would suffer irreparable harm without injunctive relief). It is a " 'drastic and extraordinary remedy that is not to be routinely granted.' " *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed.Cir. 2004) (discussing a preliminary injunction in a patent case) (quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir.1993)).

A party seeking a preliminary injunction must show (1) the party has a likelihood of success on the merits; (2) the party will be irreparably harmed without injunctive relief; (3) the balance of hardships favors the petitioning party; and (4) the public interest favors the grant of injunctive relief. *Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1353–54 (Fed.Cir.2008) (discussing injunctive relief in a patent context); *FMC*

*Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir.1993); *see also Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1344 (Fed.Cir.2008), *reh'g and reh'g en banc denied* (Feb. 23, 2009); *Akal Sec., Inc. v. United States*, 87 Fed.Cl. 311, 317 (2009). No single factor is determinative, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427. However, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify ... denial" of a preliminary injunction. *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed. Cir.1990). "A request for a preliminary injunction is evaluated in accordance with a 'sliding scale' approach: the more the balance of irreparable harm inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction." *Qingdao Taifa Group Co. v. United States*, 581 F.3d 1375, 1378–79 (Fed.Cir.2009) (quoting *Kowalski v. Chicago Tribune Co.*, 854 F.2d 168, 170 (7th Cir.1988)). Each of the four factors will be examined in turn.

### A. Likelihood of Success on the Merits

As discussed above, the only claim over which the court possesses jurisdiction is ERC's claim regarding USACE's decision to allow Bowhead to continue to perform the contract during the corrective action period. The plaintiff has not demonstrated a likelihood of success on the merits with regard to this claim.

Generally, "[a] plaintiff must show a 'reasonable probability' of success on the merits to justify a preliminary injunction." [10] *Akal Sec.*, 87 Fed.Cl. at 317 (citing *Bannum, Inc. v. United States*, 56 Fed.Cl. 453, 457 (2003); 11A Charles A. Wright, Ar-

---

9. The USACE decision to retain Bowhead's services during the re-evaluation is analogous to an agency decision to override a CICA automatic stay. This court has jurisdiction over override decisions, as decisions in connection with a procurement. *See RAMCOR Services Group, Inc. v. U.S.*, 185 F.3d 1286, 1290 (Fed.Cir.1999).

10. Where the likelihood of irreparable harm is greater, the plaintiff may meet a lower standard of likelihood of success on the merits. *Qingdao Taifa Group*, 581 F.3d at 1381 (where movant shows it will be irreparably harmed without injunction, it must still demonstrate "at least a fair chance of success on the merits" (internal quotation marks removed)).

thur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.3 (2d ed.2009); *A.L.K. Corp. v. Columbia Pictures Indus., Inc.*, 440 F.2d 761, 763 (3d Cir.1971)). "[W]hen analyzing the likelihood of success factor, the trial court, after considering all the evidence available at this early stage of the litigation, must determine whether it is more likely than not that the challenger will be able to prove at trial" the validity of its claim. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed.Cir. 2009). However, courts have held movants to a higher standard where the injunctive relief sought would "alter rather than maintain the status quo." *Nat'l Council of Arab Ams. v. United States*, 331 F.Supp.2d 258, 266 (S.D.N.Y.2004) (requiring the moving party in such a circumstance to establish "a 'clear' or 'substantial' likelihood of success on the merits" (quoting *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 24–25 (2d Cir. 2004))). In analyzing the probability of success on the merits, the court "views the matter in light of the burdens and presumptions that will inhere at trial." *Id.* at 1376 (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006)).

▇▇▇▇▇ In reviewing an agency's procurement decision under RCFC 52.1, the court's role is limited. Under the governing statute, 28 U.S.C. § 1491(b)(4), the court applies a standard of review adopted from the Administrative Procedure Act, codified at 5 U.S.C. § 706(2)(A) (2006). *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed.Cir.2001). This standard of review provides that a reviewing court shall set aside an agency action only if it is "arbitrary, capricious, an abuse of Discretion, or otherwise not in accordance with law." *Id.* at 1332 n. 5. The Federal Circuit has explained this standard, stating that an agency's decision may be arbitrary and capricious where "the agency 'entirely

failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.' " *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed.Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). In applying this standard, the court must be mindful that it may not substitute its judgment for that of the agency, but rather must confine its review to determining whether the agency's decision was arbitrary and capricious. *Motor Vehicle Mfrs.*, 463 U.S. at 43, 103 S.Ct. 2856; *see also Ala. Aircraft*, 586 F.3d at 1376; *AshBritt, Inc. v. United States*, 87 Fed.Cl. 344, 367 (2009). The court must avoid "undue judicial interference with the lawful discretion given to agencies." *Axiom Res. Mgmt.*, 564 F.3d at 1384 (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 67, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004)).

The plaintiff's complaint and briefing suggest that ERC believes that USACE's decision to allow Bowhead to continue its performance of the contract while the agency was taking corrective action was arbitrary and capricious, given USACE's option to sole-source the contract.[11] According to ERC, it would have made more sense for the CO to reinstate its former contract than to allow Bowhead to continue performing the new contract. However, the evidence does not support a finding that the CO failed to consider the sole source option or provide a rational explanation for the decision. The CO determined that maintaining the contract with Bowhead was necessary for national security and that securing these services through another contract mechanism during the corrective process was not feasible. A memorandum from the CO to the Commander of USACE reveals that the CO "seriously considered the option of issuing a purchase

---

11. As noted above, ERC's posture is akin to a situation in which a disappointed bidder filed a GAO protest in time to secure an automatic stay and the agency decided to override that automatic stay upon a finding that "urgent and compelling circumstances which significantly affect interests of the United States will not permit

waiting." 31 U.S.C. § 3553(c)(2). If this were ERC's situation and were ERC now challenging USACE's override decision, the court would likewise review the agency decision under an arbitrary and capricious standard. *See Nortel Gov't Solutions, Inc. v. United States*, 84 Fed.Cl. 243, 246 (2008).

order to an 8(a) contractor, rather than continuing performance of the work under the current contract. . . ." Def.'s Resp.App. 222. The memorandum further explains the CO's decision not to pursue this option following advice from USACE Command Provost Marshall in the Office of Homeland Security, Jerry Boerste ("Mr. Boerste"):

> With regard to the purchase order option, the Contracting Officer has considered the fact that it would take approximately seven (7) to ten (10) days before a purchase order could be awarded to perform the contract work until the corrective action is completed. . . . [T]he Contracting Officer has been advised by Mr. Boerste that there could be potentially serious consequences if contract work is suspended for even a week to ten (10) days.

*Id.* at 222–23. Mr. Boerste stated that " * * * * * " *Id.* at 223. The CO's memorandum further indicates that she had been advised that " * * * * * " *Id.*

Further, the decision to allow Bowhead to continue performing the contract during corrective action was not unprecedented, as the CO noted in her memorandum. Contractors have been allowed to continue performing during a re-evaluation period in situations in which suspension of performance would seemingly pose less severe risks. *See, e.g., Interscience Sys., Inc.,* 59 Comp. Gen 658, 661 (Aug. 11, 1980) (modifying earlier decision to allow contract awardee to continue performing during corrective action to avoid adverse impact on the National Computer Center); *E. Bay Elevator Co.,* Comp. Gen. Dec. B–286315.3, 2001 C.P.D. ¶ 161, 2001 WL 1113063 at *2 (Aug. 31, 2001) (noting that contract awardee was permitted to continue to perform elevator maintenance services to ensure the safety of tenants and building visitors).

 Given this background, and the fact that when the CO announced the November 24, 2009 decision to take corrective action, Bowhead had been performing the contract at issue for nearly two months, it is not likely that the court will find after review of the complete administrative record on this issue that the decision to retain Bowhead was arbitrary, capricious or otherwise not in accordance with law.[12]

### B. *Irreparable Harm*

 To succeed on a motion for a preliminary injunction, a plaintiff must also demonstrate irreparable injury, meaning that without the injunction, the plaintiff will suffer irreparable harm before a decision can be rendered on the merits. *Akal Sec.,* 87 Fed. Cl. at 319. "A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown." *Qingdao Taifa Group,* 581 F.3d at 1379 (quoting *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir. 1983)). Such a threat of imminent, irreparable injury arises where, absent a preliminary injunction, the plaintiff would be deprived of the only remedy available were the plaintiff to succeed on the merits. *Id.* (citing *Zenith Radio,* 710 F.2d at 810). In other words, irreparable injury may be found if the grant of a preliminary injunction is the only way to preserve the plaintiff's ability to litigate its claim. *See id.*

 The plaintiff has requested that the court suspend Bowhead's performance of the contract during the pendency of this case, reinstate ERC's expired contract, and compel

---

**12.** Similarly, if this were a case where the plaintiff sought the benefits of an automatic stay through timely filing of a bid protest before the GAO and was now challenging the agency's decision to formally override that stay, it also appears that the plaintiff would not have a likelihood of success on the merits. In reviewing an override decision, the court looks to whether the agency considered (1) "whether significant adverse consequences will necessarily occur if the stay is not overridden"; (2) "whether reasonable alternatives to the override exist"; (3) "how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare to the benefits associated with the approach being considered for addressing the agency's needs"; and (4) "the impact of the override on competition and the integrity of the procurement system." *Nortel Gov't Solutions,* 84 Fed.Cl. at 247 (citing *Reilly's Wholesale Produce v. United States,* 73 Fed.Cl. 705, 711 (2006); *Superior Helicopter, LLC v. United States,* 78 Fed.Cl. 181, 189 (2007)) (internal brackets and quotation marks removed). In this case, the CO's memorandum reveals that she considered all of these factors.

the return of ERC's former employees now employed by Bowhead. As evidence of the alleged irreparable harm it would suffer without this injunctive action, the plaintiff argues that it has "been dealt a massive blow with the loss of its employees," as a result of USACE's decision to award the contract to Bowhead. PL's. Mot. for Prelim. Inj. 34. ERC also argues that because of USACE's flawed initial evaluation, it has "lost its opportunity to earn profits on the contract" and to "have had its bid 'fairly and lawfully considered.'" *Id.* (quoting *Great Lakes Dredge & Dock Co. v. United States,* 60 Fed.Cl. 350, 369–70 (2004)).

As an initial matter, as discussed above, this court does not have jurisdiction to adjudicate a dispute between ERC and Bowhead, nor to compel Bowhead to "return ... ERC's employees." Further, the decision of ERC's employers to work for Bowhead is not the kind of injury that constitutes irreparable harm. *See Sierra Military Health Services, Inc. v. United States,* 58 Fed.Cl. 573, 582 (loss of employees is not a type of harm that constitutes irreparable injury); *PGBA, LLC v. United States,* 60 Fed.Cl. 196, 221 (2004), *aff'd* 389 F.3d 1219 (Fed.Cir.2004) (while significant, the loss of employees is not a proper basis of irreparable harm). The court further notes that " 'it is neither unusual [n]or [ ] inherently improper for an awardee to recruit and hire personnel employed by an incumbent contractor.'" *Consol. Eng'g Servs., Inc. v. United States,* 64 Fed.Cl. 617, 634 (2005) (quoting *A.B. Dick Co.,* Comp. Gen. Dec. B–233142, 89–1 C.P.D. ¶ 106, 1989 WL 240388 (Jan. 31, 1989)).

Because relief sought directly against Bowhead "must be ignored as beyond the jurisdiction of the court," *Sherwood,* 312 U.S. at 588, 61 S.Ct. 767, the court now turns to the other injunctive relief requested. In doing so, the court finds that the plaintiff has failed to demonstrate that a preliminary injunction suspending Bowhead's performance of the contract and instead allowing ERC to perform the contract would serve to prevent the plaintiff from suffering irreparable harm before the court may render a decision on the merits. The plaintiff has already incurred the main harm complained of—namely the loss of its employees to the contract awardee—and has not shown that a preliminary injunction within the jurisdiction of this court would ease this burden.

The plaintiff also argues that without an injunction preventing Bowhead from continuing performance of the contract, ERC will lose its opportunity to compete and earn profits, on the grounds that Bowhead may be able to rely upon ERC's personnel during the corrective action process. There is no basis for this contention. USACE has not sought new information from offerors. Further, the plaintiff's contention that without a preliminary injunction, Bowhead will become so entrenched that ERC will have lost its opportunity to compete does not demonstrate irreparable harm. *See Sierra Health Servs.,* 58 Fed.Cl. at 582 (noting that other courts have rejected the claim that the contract awardee would become so entrenched during transition that the protestor would be irreparably harmed without an injunction) (citing *Found. Health Servs. v. United States,* 1993 WL 738426 at *3 (D.D.C.1993)) ("economic loss does not, in and of itself, constitute irreparable harm. Only economic loss that threatens the survival of a movant's business constitutes irreparable harm.")

The court also notes that the plaintiff's delay in seeking injunctive relief is one of the equities that weighs strongly against ERC's claim of irreparable harm. *See Nat'l Council of Arab Ams.,* 331 F.Supp.2d at 266. ERC has known of Bowhead's award for over five months and waited two months after learning that USACE was taking corrective action before filing this case. The plaintiff's failure to immediately challenge USACE's decision to allow Bowhead to continue with the awarded contract strongly evidences that ERC did not fear immediate harm. *See PGBA,* 60 Fed.Cl. at 221 (plaintiff's argument that it would be irreparably harmed was undermined by the fact that plaintiff had not sought an injunction after GAO's decision to deny a protest). Allowing Bowhead to continue performing will not interfere with ERC's ability to litigate its claim. ERC's claims regarding the USACE corrective action process will not become moot if Bowhead

continues performance. As discussed above, these claims are not even ripe.

For all the foregoing reasons, the plaintiff has not made its required showing that issuance of preliminary injunctive relief is needed to prevent irreparable harm. This prong of the analysis does not support the plaintiff's motion for preliminary injunctive relief.

## C. *Balance of Harms and Public Interest*

The final two prongs of the court's analysis involve balancing the harms to the parties and considering whether the public interest would be served by the issuance of a preliminary injunction. These two factors are less consequential than the two discussed above. *Qingdao Taifa Group*, 581 F.3d at 1382. In deciding whether to grant a preliminary injunction, courts balance the harm that the plaintiff would suffer without injunctive relief against the harms a preliminary injunction would inflict upon the defendant and intervenors. "Generally, if the balance tips in favor of defendant, a preliminary injunction is not appropriate." *Akal Sec.*, 87 Fed.Cl. at 320 (citing Wright & Miller, *supra*, §§ 2948.2, 2951). The court also looks to whether a preliminary injunction would further the public interest or injure it. *Id.* at 320.

Here, the plaintiff has failed to show that it will suffer real harm in the absence of a preliminary injunction. Indeed, as discussed above, much of ERC's alleged harm is of its own making. By sitting on its rights and failing to secure an automatic stay before the GAO or seeking timely relief in this court, the plaintiff created or exacerbated the harm it now claims can only be avoided by preliminary injunction. Bowhead is performing the current contract because ERC did not timely seek to stop this performance. In such circumstances, the equities do not favor the plaintiff. *See Ackley v. United States*, 12 Cl.Ct. 306, 309 (1987) (In contrast to the valid interests of other parties, " 'the prejudice to the movants by denying intervention, which is the sole result of movants' sitting on their rights, is slight, if indeed, existent.' " (quoting *Cheyenne–Arapaho Tribes of Indians of Okla. v. United States*, 1 Cl.Ct. 293, 296 (1983))).

In contrast to the plaintiff, the government could suffer significant harm if an injunction is issued and USACE is forced to suspend Bowhead's performance and then look for a contract vehicle to reinstate ERC. The risks posed by any gap in security services was spelled out in detail in USACE's original decision to take corrective action back in November. As discussed above, the CO stated in that memorandum that a work stoppage resulting from selecting a new contractor to perform during the corrective action " * * * * " Def.'s Resp.App. 223. " * * * * " *Id.* In other words, a preliminary injunction causing an even temporary cessation of work on the contract at issue would create security risks of a potentially serious nature.

Based on the foregoing, there is no question that the balance of the harms weighs in favor of the government. For these same reasons, the public interest weighs against preliminary injunctive relief in this case. The security risks posed by stoppage of Bowhead's performance of the contract would be plainly against the public interest. ERC's contention that the public interest is also served by ensuring a proper procurement process is legitimate, however, the public's interest in ensuring the use of valid procurement procedures has already been addressed by USACE's decision to undertake corrective action. There is nothing more for the court to do. In this context, in which the agency is currently working to ensure a fair procurement process, the public's interest in security outweighs the public interest in the integrity of the procurement process. *See DataPath, Inc. v. United States*, 87 Fed.Cl. 162, 166 (2009) (holding that "the interests of open and fair competition do not outweigh the interests of national defense and security," and denying protest of military's name-brand solicitation and sole-source award of contract for particular military equipment).

Accordingly, the court finds that the balance of harms does not support an issuance of a preliminary injunction in this case, nor would the public interest be served by awarding the requested injunctive relief.

## CONCLUSION

For all of the above-stated reasons, the government's motion to dismiss for lack of jurisdiction is **GRANTED–IN–PART** and **DENIED–IN–PART** and the plaintiff's motion for a preliminary injunction is **DENIED.**

The schedule as to resolution of the decision to allow Bowhead to perform the contract during the period of corrective action is as follows:

| | |
|---|---|
| March 22, 2010 | Defendant shall file the administrative record regarding the remaining issue before the court. |
| April 1, 2010 | Plaintiff shall file its motion for judgment on the administrative record. |
| April 21, 2010 | Defendant and intervenor shall file their responses to the plaintiff's motion and any cross-motions for judgment on the administrative record. |
| May 11, 2010 | Plaintiff shall file its reply and its response to the defendant's and intervenor's cross-motions for judgment on the administrative record. |

The parties shall provide the court with a courtesy copy of their briefs in non-PDF electronic format (Wordperfect) via e-mail to the following address:firestone—chambers@ao.uscourts.gov.

**IT IS SO ORDERED.**