# United States Court of Appeals for the Federal Circuit

2009-1103

QINGDAO TAIFA GROUP CO., LTD.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellee,

v.

GLEASON INDUSTRIAL PRODUCTS, INC.
and PRECISION PRODUCTS, INC.,

Defendants-Appellants.


Louis S. Mastriani, Adduci, Mastriani & Schaumberg, L.L.P., of Washington, DC,  argued for plaintiff-appellee Qingdao Taifa Group Co., Ltd.  With him on the brief was William C. Sjoberg.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States.  With her on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Stephen C. Tosini, Attorney.

Alexander H. Schaefer, Crowell & Moring LLP, of Washington, DC, argued for defendants-appellants.  With him on the brief was Matthew P. Jaffe.

Appealed from:  United States Court of International Trade

Chief Judge Jane A. Restani

# United States Court of Appeals for the Federal Circuit

2009-1103

QINGDAO TAIFA GROUP CO., LTD.,

Plaintiff-Appellee,

v.

UNITED STATES

Defendant-Appellee,

v.

GLEASON INDUSTRIAL PRODUCTS, INC.
and PRECISION PRODUCTS, INC.,

Defendants-Appellants.

Appeal from the United States Court of International Trade in case no. 08-00245, Chief Judge Jane A. Restani

———————————————

DECIDED: September 28, 2009

———————————————

Before LOURIE, RADER, and MOORE, Circuit Judges.

RADER, Circuit Judge.

The United States Court of International Trade ("CIT") enjoined liquidation of entries for importers of hand trucks manufactured and exported by Qingdao Taifa Group Co., Ltd. ("Taifa"), during the 2005 to 2006 period. Because the trial court did not abuse its discretion in halting the liquidation, this court affirms.

I.

Taifa, based in China, manufactures and exports hand trucks. Gleason Industrial Products, Inc., and Precision Products, Inc. (collectively "Gleason") manufacture hand trucks in the domestic market. From December 2005 through November 2006, various United States companies purchased hand trucks from Taifa and imported them into the United States. Upon entry of the hand trucks, the United States importers posted antidumping duty cash deposits as required by antidumping regulations. Taifa did not import any hand trucks itself and therefore did not post any cash deposits.

The Department of Commerce ("Department") then published a notice to all interested parties of the opportunity to request a review of the entries. Based on requests from both Taifa and Gleason, the Department initiated a review and sent agency officials to China to interview Taifa personnel. During the visits to Taifa, the Department detected concealment, destruction, and tampering with responsive documents. Due to Taifa's resistance, the Department applied adverse facts available under 19 U.S.C. § 1677e(b), and assigned an antidumping rate used for the People's Republic of China ("PRC"). That rate is significantly higher than the rate normally applied to independent exporters.

Taifa filed a case at the CIT to challenge the Department's high antidumping duty. On the same day, Taifa filed a motion for a preliminary injunction to enjoin liquidation of entries subject to the challenged determination pursuant to 19 U.S.C. § 1516a(c)(2), serving both the United States and Gleason with copies of its complaint and motion. The court granted Taifa's motion before the time for filing an opposition had lapsed. Gleason later intervened and filed a motion to set aside the injunction

arguing — among other things — that Taifa had failed to show that it would be irreparably harmed if an injunction was not granted. Gleason filed its motion on the same day that responses to Taifa's motion would have been due. The court denied Gleason's motion, finding:

> No extraordinary showing of irreparable harm is required to obtain the injunction sought here. It has long been established that liquidation of entries after a final determination of duties for a particular period, before the merits can be litigated, is sufficient harm. See Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983) (granting domestic producer injunction of liquidation during challenge to periodic review determination). Also, one need not be an importer to seek relief under 19 U.S.C. § 1516a(c)(2). See id. at 811. Competitive concerns of the domestic producer were one of the determining factors in Zenith. See id. at 810-11. Competition is no less a concern for a foreign producer or exporter than it is for a domestic producer. Therefore, Gleason's argument based on Taifa's lack of its own imports is of no consequence and, as a legal matter, Taifa has established irreparable harm. There is also little doubt that the public interest is served by permitting the court to reach a considered decision regarding the agency's determination as to whether, and in what amount, duties are owed, before precluding the parties from litigating the issue. No harm comes to either side by preserving the status quo.

Qingdao Taifa Group Co. v. United States, No. 08-00245, 2008 WL 4787488, at *1 (Ct. Int'l Trade Nov. 4, 2008). Gleason timely appealed. This court has jurisdiction under 28 U.S.C. § 1292(c)(1).

II.

In international trade cases, the CIT has authority to grant preliminary injunctions barring liquidation in order to preserve a party's right to challenge the assessed duties. See Yancheng Baolong Biochemical Prods. Co. v. United States, 406 F.3d 1377, 1380-81 (Fed. Cir. 2005); see also 19 U.S.C. § 1516a(c)(2). To prevail on a motion for a preliminary injunction, the movant must demonstrate four things: (1) that it will be immediately and irreparably injured; (2) that there is a likelihood of success on the

merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors the petitioner. Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983) (citing S.J. Stile Assoc. Ltd. v. Snyder, 646 F.2d 522, 252 (CCPA 1981)). "Central to the movant's burden are the likelihood of success and irreparable harm factors." Sofamar Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1219 (Fed. Cir. 1996). "A request for a preliminary injunction is evaluated in accordance with a 'sliding scale' approach: the more the balance of irreparable harm inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction." Kowalski v. Chi. Tribune Co., 854 F.2d 168, 170 (7th Cir. 1988).

District courts enjoy broad discretion to grant or withhold injunctions. Accordingly, this court reviews a decision to grant an injunction and the scope of that injunction for an abuse of discretion. See Tegal Corp. v. Tokyo Electron Am., Inc., 257 F.3d 1331, 1335 (Fed. Cir. 2001). "'An abuse of discretion may be established under Federal Circuit law by showing that the court made a clear error of judgment in weighing the relevant factors or exercised its discretion based on an error of law or clearly erroneous fact finding.'" Lab. Corp. of Am. Holdings v. Chiron Corp., 384 F.3d 1326, 1331 (Fed. Cir. 2004) (quoting Int'l Rectifier Corp. v. Samsung Elecs. Co., 361 F.3d 1355, 1359 (Fed. Cir. 2004)).

III.

As an initial matter, the United States argues that Gleason waived its right to oppose the preliminary injunction by failing to respond to Taifa's motion in a timely fashion. This court disagrees. The record shows that Gleason intervened and filed a

response to Taifa's motion before the deadline to oppose the motion had lapsed. Gleason cannot be faulted, as the United States now suggests, for failing to anticipate that the trial court would grant Taifa's request a mere ten days after it was filed. Indeed, the trial court acted before the end of the time period for Gleason's opposition.

The decision of the United States Court of Appeals for the Seventh Circuit, LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263 (7th Cir. 1995), does not support the position that Gleason waived its opportunity to oppose the injunction. In that case, the defendant attempted to raise a new argument in a Rule 59 motion for a rehearing after the district court had entered summary judgment. Id. at 1267. The district court declined to address the argument because it could and should have been raised before grant of summary judgment. Id. The Seventh Circuit affirmed. Unlike LB Credit, however, Gleason intervened and raised its arguments in a timely manner. The trial court's initial grant of the preliminary injunction did not erect a permanent and impenetrable barrier to Gleason's timely opposition.

IV.

Gleason argues that the lower court clearly erred with respect to each of the four factors for assessing the merits of a preliminary injunction. This court addresses each factor in turn.

A.

"A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown." Zenith, 710 F.2d at 809. In Zenith, the trial court denied Zenith — an American manufacturer of televisions — an injunction on the liquidation of entries on

televisions reasoning that it would suffer no irreparable harm without an injunction. This court reversed:

> In this case, we conclude that liquidation would indeed eliminate the only remedy available to Zenith for an incorrect review determination by depriving the trial court of the ability to assess dumping duties on Zenith's competitors in accordance with a correct margin on entries in the '79-'80 review period. The result of liquidating the '79-'80 entries would not be economic only. In this case, Zenith's statutory right to obtain judicial review of the determination would be without meaning for the only entries permanently affected by that determination. In the context of Congressional intent in passing the Trade Agreements Act of 1979 . . . we conclude that the consequences of liquidation do constitute irreparable injury.

Id. at 810. Without any other statutory framework or process to challenge the duties, this court reasoned that an injunction was the only way to preserve Zenith's ability to challenge the applicable rates if they were later changed by the trial court. Put differently, once the entries were liquidated the law provided no viable method to recover any additional money even if the liquidation rate was later deemed incorrect. This unavoidable jeopardy created a potential for irreparable harm and prompted this court to reverse the denial of an injunction.

For the same reason as in Zenith, Taifa faces an irreparable forfeiture in the absence of an injunction. Moreover, Zenith informs this case even though it dealt with a domestic producer while this case involves a foreign producer. The principles articulated in Zenith do not apply solely to domestic producers. To the contrary, Zenith repeatedly refers to "interested parties" as the group eligible to be protected. See Zenith, 710 F.2d at 809 ("The implementing legislation will preserve an interested party's right to challenge final determinations . . . ."; "Congress deliberately gave interested parties the right to obtain effective judicial review of section 751 review

determinations to aid effective enforcement of antidumping laws."; "A conclusion that no irreparable harm is shown when that judicial review is rendered ineffective by depriving the interested party of the only meaningful correction for the alleged errors, would be inconsistent with the actions taken by Congress to correct deficiencies in prior enforcement activity under the antidumping laws." (emphases added)). While Zenith's status as a domestic producer was a factor considered by this court, it was not dispositive of the potential for irreparable harm or of the merits of the injunction in general.

In addition, the legislative framework of the liquidation process further supports the trial court's grant of an injunction in this case. Section 516a(c)(2) of the Tariff Act of 1930 gives broad authority to the CIT to "enjoin the liquidation of some or all entries of merchandise . . . upon a request by an *interested party* for such relief and a proper showing that the requested relief should be granted under the circumstances." 19 U.S.C. § 1516a(c)(2) (emphasis added). Section 771(9)(A), in turn, defines "interested party" to include "a *foreign* manufacturer, producer, or exporter, or the United States importer, of subject merchandise or a trade or business association a majority of the members of which are producers, exporters, or importers of such merchandise." 19 U.S.C. § 1677(9)(A) (emphasis added). The Tariff Act therefore expressly contemplates protections for foreign as well as domestic manufacturers. In this connection, this court also notes that some of the history of this enactment contemplated that the CIT would possess authority to "issue an injunction restraining liquidation while the litigation is pending" after considering all relevant facts. S. Rep. No. 96-249, as reprinted in 1979 U.S.C.C.A.N. 381, 636.

In the end, the same considerations that drove the <u>Zenith</u> decision govern this case as well. If the entries are liquidated, Taifa will have no later recourse in the event that the liquidation rate is determined to be incorrect. While any rate change will apply to prospective entries, all entries liquidated before the court's change in the rate will escape the adjustment. In that case, Taifa would have suffered an irreparable harm. This injunction avoids that situation. Though Gleason makes the dubious contention that Taifa will suffer no harm because it did not directly post any of the cash deposits for the entries, these potential overcharges would remain a part of any transaction between Taifa and its domestic importers. Taifa may have the responsibility to reimburse or compensate the domestic importers who actually posted the deposits. In other words, this court acknowledges the distinct probability that Taifa will ultimately incur the charge or lose customers. Thus, the trial court did not clearly err in determining that Taifa would suffer immediate and irreparable harm without an injunction.

B.

Even where the movant shows that it will be irreparably harmed in the absence of an injunction, "the movant must demonstrate at least a 'fair chance of success on the merits' for a preliminary injunction to be appropriate." <u>U.S. Ass'n of Imps. of Textiles & Apparel v. Dep't of Commerce</u>, 413 F.3d 1344, 1347 (Fed. Cir. 2005) (citing <u>Atari Games Corp. v. Nintendo of Am., Inc.</u>, 897 F.2d 1572, 1577 (Fed. Cir. 1990) (applying Ninth Circuit law)). The Supreme Court has recently confirmed the importance of this factor in <u>Munaf v. Geren</u>, 128 S. Ct. 2207 (2008) (reversing a grant of a preliminary injunction because the district court had not conducted an analysis of the likelihood of success on the merits).

In assessing the likelihood of success here, the CIT stated:

> Gleason asserts that there can be no substantial question because Taifa received a total-adverse-facts-based rate of duty due to non-cooperation. This, however, does not resolve the matter. Even if the court were to conclude that Taifa should receive an adverse rate, the issue of the appropriate rate to apply remains. Taifa challenges the particular selection of total adverse facts from among the available facts, and the selection of the PRC-wide rate for Taifa, as it asserts it is not government-controlled. The United States itself concedes that the issues here are substantial enough so that the injunction should remain.

Qingdao Taifa, 2008 WL 4787488 at *2. On appeal, no party proffers any significant evidence about the merits of the imposed tariff rate. Taifa appears to argue that because it is not a government-controlled entity the PRC rate should not — under any circumstances, i.e., application of adverse facts — apply to its imports. Taifa cites no statute or regulation to support its position. Gleason only points to Taifa's admittedly egregious conduct during the Department's investigation to support its contention that Taifa has a limited chance of success in changing the rate. Gleason similarly cites no statute or regulation for support. For its part, the United States — while not admitting a likelihood of success on the merits — concedes that this case warrants a preliminary injunction.

With this record, this court detects no clear error in the trial court's finding of a sufficient likelihood of Taifa's ultimate success. Given the United States' concession that a preliminary injunction is appropriate, Taifa's challenge to the PRC rate takes on additional credibility.

In addition, where the movant has shown a strong likelihood of irreparable harm, as here, the burden to show a likelihood of success is necessarily lower. See Ugine & ALZ Belg. v. United States, 452 F.3d 1289, 1294 (Fed. Cir. 2006) ("[A]s the Court of

International Trade has explained, the 'greater the potential harm to the plaintiff, the lesser the burden on Plaintiffs to make the required showing of likelihood of success on the merits.'" (quoting SKF USA Inc. v. United States, 316 F. Supp. 2d 1322, 1329 (Ct. Int'l Trade 2004))); see also Corus Group PLC v. Bush, 217 F. Supp. 2d 1347, 1353-54 (Ct. Int'l Trade 2002) ("In reviewing the factors, the court employs a 'sliding scale.' Consequently, the factors do not necessarily carry equal weight. The crucial factor is irreparable injury." (citations omitted)). The court takes very seriously the Supreme Court's recent emphasis on the importance of the likelihood of success in the preliminary injunction calculus. See Munaf, 128 S.Ct. at 2219. But the court also recognizes that 19 U.S.C. § 1516a(c)(2) envisions the use of preliminary injunctions in the antidumping context to preserve proper legal options and to allow for a full and fair review of duty determinations before liquidation. In light of these considerations, this court finds that the trial court did not clearly err in finding that Taifa established a likelihood of success.

C.

The third and fourth factors — while less consequential than the first two — also slightly weigh in favor of Taifa. Significantly, granting the injunction would only postpone liquidation to ensure a proper and accurate liquidation rate. The United States concedes as much. Gleason, therefore, would only be harmed by the delay in liquidation whereas Taifa — as stated above — would have no recourse if the entries were liquidated at the incorrect rate.

## IV.

In sum, Taifa has met its burden to support a grant of a preliminary injunction. The CIT did not abuse its discretion by enjoining liquidation of entries subject to the resolution of Taifa's challenge.  This court thus affirms.

## AFFIRMED