# United States Court of Appeals for the Federal Circuit

---

**ALL ONE GOD FAITH, INC., DBA DR. BRONNER'S MAGIC SOAPS,**
*Plaintiff*

**GLŌB ENERGY CORP., ASCENSION CHEMICALS LLC, UMD SOLUTIONS LLC, CRUDE CHEM TECHNOLOGY LLC,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**CP KELCO U.S., INC.,**
*Defendant*

---

2023-1078, 2023-1081

---

Appeals from the United States Court of International Trade in Nos. 1:20-cv-00160-GSK, 1:20-cv-00161-GSK, 1:20-cv-00162-GSK, 1:20-cv-00163-GSK, 1:20-cv-00164-GSK, Judge Gary S. Katzmann.

---

Decided: February 27, 2025

---

KYL JOHN KIRBY, Kyl J. Kirby, Attorney and Counselor at Law, PC, Fort Worth, TX, argued for plaintiffs-

appellants.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by CLAUDIA BURKE, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM, ANTONIA RAMOS SOARES, BRETT SHUMATE; SHAE WEATHERSBEE, Office of Chief Counsel, United States Customs and Border Protection, United States Department of Homeland Security, Washington, DC.

_____

Before MOORE, *Chief Judge*, HUGHES and CUNNINGHAM, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Appellants appeal the decision of the United States Court of International Trade affirming determinations by Customs and Border Protection that Appellants transshipped xanthan gum from the People's Republic of China through India to evade antidumping duties imposed by an antidumping order issued by the United States Department of Commerce.

Appellants challenge two aspects of the trial court's decision. First, regarding evasion determinations over which the trial court exercised jurisdiction, they argue that the trial court improperly concluded that Customs' evasion determinations were in accordance with law and supported by substantial evidence. Second, they contend that the trial court improperly dismissed for lack of subject matter jurisdiction certain claims seeking review of evasion determinations because those claims concerned entries that had been finally liquidated. We conclude that the trial court did have jurisdiction over these claims. Nonetheless, because Customs' other evasion determinations were in accordance with law and not an abuse of discretion, and the trial court

indicated it would find evasion regarding the finally liquidated entries for the same reasons if it had jurisdiction, we affirm.

## I

This current appeal addresses whether GLōB Energy Corporation, Ascension Chemicals LLC, UMD Solutions LLC, Crude Chem Technology LLC (collectively, Appellants) improperly transshipped[1] xanthan gum from the People's Republic of China (PRC) through India in an effort to evade antidumping (AD) duties imposed by the United States Department of Commerce. We begin with an explanation of the scope of the statutory scheme under which AD determinations are reached and reviewed. We then summarize the case's procedural history before turning to the merits.

## A

In 2013, in accordance with 19 U.S.C. § 1673e, Commerce issued AD Order No. A-570-985 on xanthan gum from China. *See Xanthan Gum From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 78 Fed. Reg. 43,143 (Dep't of Commerce July 19, 2013) (AD Order). That order set forth the AD duties to be collected on imports of xanthan gum from China.

In 2016, the President signed into law the Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA). Pub. L. No. 114-125, 130 Stat. 122 (2016). Title IV, Section 421 of the TFTEA is the Enforce and Protect Act of 2015

---

[1] Transshipment occurs when goods originating in a country subject to antidumping or countervailing duty orders are exported to a third country prior to importation into the United States in an effort to obscure the country of origin and evade payment of duties.

(EAPA), which empowers Customs to investigate allegations that an importer has evaded AD or countervailing duties (CVD). 19 U.S.C. § 1517.

Under the EAPA, the Customs Commissioner has fifteen business days to initiate an investigation after receipt of an allegation or referral that "reasonably suggests that covered merchandise has been entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(b)(1). Within 90 calendar days of initiating an investigation, the Commissioner must decide whether there is "reasonable suspicion" that covered merchandise entered the customs territory of the United States through evasion that warrants imposition of interim measures. 19 U.S.C. § 1517(e). If the Commissioner determines there is such reasonable suspicion, the Commissioner shall take the following interim measures: (1) "suspend the liquidation of each unliquidated entry of such covered merchandise that entered on or after the date of the initiation of the investigation;" (2) "extend the period for liquidating each unliquidated entry of such covered merchandise that entered before the date of the initiation of the investigation" (pursuant to her authority under § 1504(b)); and (3) "take such additional measures as the Commissioner determines necessary to protect the revenue of the United States, including requiring a single transaction bond or additional security or the posting of a cash deposit with respect to such covered merchandise" (pursuant to her authority under § 1623). *Id.* These interim suspensions dissolve once the Customs investigation terminates.

The Commissioner then has 300 calendar days after initiating the investigation to "make a determination, based on substantial evidence, with respect to whether such covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(c)(1)(A). "If the Commissioner finds that a party or person . . . has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for

information, the Commissioner may, in making a determination . . . , use an inference that is adverse to the interests of that party or person in selecting from among the facts otherwise available to make the determination." 19 U.S.C. § 1517(c)(3)(A).

A party determined to have brought covered merchandise into the customs territory of the United States has 30 business days to file an appeal with the Commissioner for de novo review. 19 U.S.C. § 1517(f)(1). A party whose appeal to the Commissioner fails has 30 business days to seek review by the Court of International Trade (trial court or CIT). 19 U.S.C. § 1517(g)(1). A party seeking judicial review of an EAPA determination can seek a preliminary injunction to prevent liquidation during the litigation. *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1378 (Fed. Cir. 2009) ("In international trade cases, the CIT has authority to grant preliminary injunctions barring liquidation in order to preserve a party's right to challenge the assessed duties.").

B

In December 2018 and March 2019, CP Kelco U.S., a domestic producer of xanthan gum, submitted letters to Customs alleging that xanthan gum from China subject to the AD Order was being transshipped by Appellants through India to evade AD duties. *See* J.A. 314–19 (Ascension December 2018 allegation); J.A. 343–49 (Crude March 2019 allegation); J.A. 353–59 (GLōB March 2019 allegation); J.A. 363–69 (Ascension March 2019 allegation); J.A. 373–78 (UMD March 2019 allegation). Based on these letters, Customs initiated an investigation under 19 U.S.C. § 1517(b)(1). The AD rate applicable to merchandise from Chinese companies that did not receive their own rates, *i.e.*, those that are determined to be part of the China-Wide Entity, is 154.07%. AD Order at 43,144.

After evaluating CP Kelco's EAPA allegations concerning evasion, Customs' Trade Remedy Law Enforcement

Directorate (TRLED) in the Office of Trade initiated separate investigations of each importer on May 7, 2019. TRLED specifically noted that "CP Kelco has submitted documentation reasonably available to it that suggests xanthan gum is not produced in India, and that Chinese-origin xanthan gum is being sourced through India for transshipment to the United States with India the declared country of origin." J.A. 37, 41, 45, 49. TRLED thus concluded that "the allegation reasonably suggests that covered merchandise has entered into the customs territory of the United States by means of evasion, and that [Appellants] may have been importing such merchandise." *Id.*

On August 12, 2019, Customs notified Appellants that it would consolidate the investigations. Customs also provided notice that it was imposing interim measures pursuant to 19 U.S.C. § 1517(e), including that Customs would adjust unliquidated entries of covered merchandise by the investigation "to reflect that they are subject to the antidumping order on xanthan gum from China and cash deposits will be owed," suspend liquidation for entries that entered on or after May 7, 2019, the date Customs initiated its investigation, and extend the period for liquidation for all unliquidated entries that were entered before May 7, 2019. J.A. 404.

On August 19, 2019, Customs sent Appellants additional requests for information, to which they responded on September 13, 2019. J.A. 50–93. In these responses, Appellants each indicated that their merchandise was manufactured by a common supplier, Chem Fert Chemicals. *Id.* On August 20, 2019, Customs sent requests for information to Chem Fert; Chem Fert responded on September 3, 2019. *See* J.A. 523–29 (Chem Fert response). The parties submitted additional information and written arguments to Customs.

1

After the investigation, Customs determined Appellants, along with several other importers who are not parties to this appeal, had improperly imported Chinese origin xanthan gum into the United States by transshipment through India without disclosing the true country of origin.

In its March 9, 2020 Final Determination, Customs issued its affirmative determination of evasion covering the period of investigation from April 16, 2019 to March 9, 2020. J.A. 183–84. Customs explained that the EAPA statute outlines three elements for Customs to address in reaching an evasion determination: "1) whether the entries in question [we]re covered merchandise (*i.e.*, merchandise that is subject to an AD/CVD order) when they entered into the customs territory of the United States; 2) whether such entry was made by a material false statement or act or material omission; and 3) whether there was a resulting reduction or avoidance of applicable AD/CVD cash deposits or other security." J.A. 187.

Based on information collected during its investigation, Customs determined there was substantial evidence demonstrating that the xanthan gum at issue was of Chinese origin and "[wa]s subject to the China-wide entity rate for the AD order on xanthan gum from China." J.A. 201. Customs also concluded that because "merchandise was misidentified as of Indian origin" and free of duties at the time of entry, no cash deposits had been collected on the entries, and there was therefore a resulting reduction or avoidance of applicable AD duties. J.A. 187, 194, 196, 198. In its affirmative evasion finding, Customs rejected arguments by the importers that there was no evasion because the merchandise in the entries at issue was manufactured in and exported from China by entities for which the cash deposit rate has been 0.00 percent. J.A. 187, 194, 196, 198.

Regarding Appellants, Customs stated that they, along with their purported manufacturer, Chem Fert, had not co-operated "to the best of their abilities," and that "[n]either Chem Fert nor the [Appellants] provided requested production documentation related to the actual xanthan gum imported into the United States that could have enabled [Customs] to determine the country of origin." J.A. 187–88 (regarding Ascension); *see also* J.A. 194–95 (regarding UMD), J.A. 196 (regarding Crude), J.A. 198 (regarding GLōB). Customs therefore determined it would apply an adverse inference on the question of who manufactured the merchandise at issue, inferring that the foreign manufacturer had not manufactured the imported xanthan gum, and would make a determination based on available record information. J.A. 200.

2

Pursuant to 19 U.S.C. § 1517(f), the importers sought administrative review of the Final Determination. On July 16, 2020, after de novo review, the Customs' Office of Regulations and Rulings (ORR) issued a Decision affirming Customs' Final Determination. In its decision, ORR determined that the goods at issue were "covered merchandise" transshipped from China to India for export and that the Appellants had engaged in evasion of the AD Order because they had imported Chinese-origin xanthan gum but falsely identified India as the country of origin. ORR also found that the importers had falsely identified their entries as not being subject to AD duties at the time of entry, which resulted in no cash deposits being applied to the merchandise. Additionally, ORR rejected arguments that there was no evasion because the errors in entry documents were clerical errors, noting that "[a]t the time of entry, the [Appellants] consciously declared the merchandise as of Indian origin . . . [and] that the declarations were (even if unwittingly) based on false facts, does not make them the result of clerical error." J.A. 280.

In its Decision, ORR also dismissed arguments from Appellants that CP Kelco—the domestic entity that had submitted the initial complaint to Customs—was not producing oilfield grade xanthan gum in the United States and that this fact detracted from the weight of the evidence. J.A. 278–80. According to Appellants, this constituted "changed circumstances that could remove oilfield grade xanthan gum from the antidumping order." J.A. 278. In rejecting these arguments, ORR found that the argument did not relate to the "narrow" question in an EAPA investigation of whether merchandise that is subject to an AD Order "entered by means of a material falsehood or omission resulting in the non-payment or reduction of AD duties." J.A. 279.

3

Appellants then each separately sought judicial review of Customs' evasion determinations before the trial court. The trial court consolidated these cases into the present action. After consolidation, each of the Appellants filed motions for judgment on the agency record; the government responded in opposition. The government simultaneously moved to dismiss the claims of importer Dr. Bronner's for lack of subject matter jurisdiction, since these claims concerned entries that had been finally liquidated. The trial court granted the Government's motion to dismiss Dr. Bronner's claims and applied the same reasoning to also dismiss GLōB's claims regarding finally liquidated entries. The trial court then denied the remaining Appellants' motions for judgment on the agency record, thus affirming Customs' EAPA evasion determinations.

II

We review legal holdings, such as granting a motion to dismiss for lack of subject matter jurisdiction, de novo. *Bell BCI Co. v. United States*, 570 F.3d 1337, 1340 (Fed. Cir. 2009); *JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000).

When reviewing the Customs' EAPA determinations or administrative review decisions, we apply the same "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard that the trial court applied in reviewing the Customs' determinations. J.A. 14; 19 U.S.C. § 1517(g)(2); *see also BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1300 (Fed. Cir. 2019).

### III

With respect to the twelve entries over which the trial court determined that it had jurisdiction and evaluated the arguments on the merits, Appellants appeal Customs' determination as resting on two alleged errors: they argue that Customs (1) "fail[ed] to consider whether there was a 'change in circumstances affecting the industry' such that entries were not covered merchandise" and (2) erroneously applied an adverse inference. J.A. 19.

For these entries, the trial court concluded that Customs' evasion determinations were not arbitrary, capricious, nor an abuse of discretion. The trial court also concluded that Customs' evasion determinations were independently supported by substantial evidence. We agree with the trial court on both determinations.

### A

"If the domestic industry truly no longer has any interest in maintaining the antidumping duty order . . . , then the proper procedure is to institute a 'changed circumstances' administrative review pursuant to 19 U.S.C. § 1675(b) and 19 C.F.R. § 353.25(d)." *Nitta Indus. Corp. v. United States*, 997 F.2d 1459, 1464 (Fed. Cir. 1993). A party subject to a final affirmative determination resulting from an AD evasion determination is an interested party that may challenge the AD order by showing such changed circumstances that the domestic industry will not be injured if the AD order is modified or revoked. Where "changed circumstances sufficient to warrant a review

exist," Commerce, not Customs, must conduct the review of the alleged changed circumstances. 19 U.S.C. § 1675(b)(1)(C).

Appellants argued before the trial court that because "evidence on the record demonstrated that it is possible or even likely that CP Kelco is not subject to material injury by oilfield xanthan produced in China, [Customs] was thus required to refer the matter to [Commerce] for a changed circumstances review." J.A. 19 (internal quotation marks omitted) (second alteration in original). Specifically, Appellants argued Customs erred by failing to refer to Commerce the question of whether CP Kelco—the domestic entity that had submitted the initial complaint to Customs which prompted the relevant investigations of Appellants—underwent a "corporate strategy shift" "that could remove oilfield grade xanthan gum from the antidumping order." J.A. 170, 212. According to Appellants, CP Kelco was no longer producing oilfield grade xanthan gum in the United States. Appellants argued before the trial court that "it is possible or even likely that CP Kelco is not subject to material injury by oilfield xanthan produced in China," and thus, that xanthan gum should not be covered merchandise under the AD Order. J.A. 19, 21.

The trial court disagreed and clarified that the evidence Appellants relied upon—"a single email chain"—failed to show with any certainty that CP Kelco was no longer producing oilfield xanthan gum in the United States. J.A. 20. Indeed, the trial court noted that, in the emails cited by Appellants, "CP Kelco expressly states that it is manufacturing substantial quantities of ZANFLO [Oilfield Xanthan Gum]." J.A. 20. The trial court concluded Appellants did not identify any record evidence "which plausibly supports their contention that changed circumstances review would be appropriate." J.A. 21. This conclusion is consistent with the statutory requirement that matters be referred to Commerce only where "changed

circumstances *sufficient to warrant a review*" exist. 19 U.S.C. § 1675(b)(1)(C) (emphasis added).

Additionally, because Appellants did not argue that any change of circumstances would apply retroactively, the trial court concluded that the issue was not relevant to Customs' present evasion determinations. J.A. 21. The trial court cited ORR's statement that any possible change in circumstances that may result in Commerce modifying the scope "at a later date does not change the fact that, at the time of entry, the xantha[n] gum was covered merchandise." J.A. 21. Thus, because any alleged changed in circumstance was only relevant to future modifications, "such review was not essential to [Customs'] determination of evasion" in the present case. J.A. 21. Accordingly, we agree with the trial court and hold it was not an abuse of discretion for Customs to decline to refer Appellants' request for review by Commerce where it reasonably concluded changed circumstances sufficient to warrant a review did not exist.

B

Appellants further argue that Customs' application of adverse inferences against them based on the failure of Appellants' manufacturers to cooperate with requests for information was arbitrary, capricious, an abuse of discretion, not in accordance with law, and not supported by substantial evidence. We disagree.

The statute governing procedures for investigating claims of evasion of AD orders provides that Customs "may . . . use an inference that is adverse to the interests of that party or person in selecting from among the facts otherwise available to make the determination" against an interested party, importer, foreign producer, foreign exporter, or foreign government who "has failed to cooperate by not acting to the best of [its] ability to comply with a request for information." 19 U.S.C. § 1517(c)(3)(A). Such adverse inferences may be used "without regard to whether

another person involved in the same transaction or transactions under examination has provided the information sought by the Commissioner, such as import or export documentation." 19 U.S.C. § 1517(c)(3)(B).

Here, it is undisputed that "the claimed manufacturers either did not respond to [Customs'] [requests for information], or failed to provide most of the information requested in the [request for information]." J.A. 200. That the manufacturers were uncooperative is clear from the record: Appellants themselves admitted in their briefing before the trial court that they had to sue the manufacturers to obtain documentation relevant to the EAPA determination. J.A. 22–23. In its EAPA Determination, Customs applied adverse inferences against the manufacturers, and "infer[red] that the claimed foreign manufacturers did not manufacture the imported xanthan gum," instead determining that the alleged Indian-origin xanthan gum was transshipped Chinese-origin xanthan gum. J.A. 200–01.

Appellants argue that because they themselves cooperated with Customs' requests for information to the best of their ability, it was improper for Customs to apply this adverse inference against the manufacturers. Appellants do not cite any law or precedent to support their position that adequately cooperative conduct by an importer should prevent an adverse inference against the manufacturer.

As the trial court noted, "these adverse inferences [sic] were not applied to [Appellants], but rather to the alleged foreign manufacturers—the same manufacturers the [Appellants] state they were forced to sue in order to 'obtain documentation' relevant to the EAPA investigation." J.A. 22–23. Because it is uncontroverted that the alleged manufacturers were not cooperative, Customs properly applied an adverse inference against the manufacturer as authorized by statute, irrespective of the conduct of other interested parties like Appellants. *See* 19 U.S.C. § 1517(c)(3)(B).

Thus, we agree with the trial court that Customs' application of the adverse inference was in accordance with law.

Regardless of the adverse inference, Customs' inference that the foreign manufacturers did not manufacture the imported xanthan gum and determination that the alleged Indian-origin xanthan gum was transshipped Chinese-origin xanthan gum were supported by substantial evidence. The trial court noted that Customs' determination that China produced the subject goods, rather than India (*i.e.*, the adverse inference fact), was also "independently supported by the record." J.A. 23. Appellants do not dispute that the goods transshipped from India originated in China. Data from the International Trade Commission stated that "xanthan gum is made in China, Austria, France, and the United States, with no reference to India"; "large and rising volumes of imports into India from China of the category of merchandise including xanthan gum, while the volumes from other xanthan-gum producing countries (i.e., Austria, France, and the United States) are minimal"; and there is a "history of attempted circumvention of the xanthan gum AD order by various companies." J.A. 200–01; *see also* J.A. 348. This evidence far exceeds the "mere scintilla" of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" needed to withstand substantial evidence review. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (internal citation omitted). Customs' determination of evasion is supported by substantial evidence.

## IV

Appellants also argue that the trial court erred in holding that it lacked jurisdiction over Appellant GLōB's challenges to Customs' liquidation of the disputed merchandise because the relevant entries were finally liquidated before the trial court rendered its decision. We agree. But because the trial court noted it would deny GLōB's motion for

judgment on the agency record for the same reasons stated for denying the motion for judgment on the agency record of the other Appellants' entries, we nonetheless affirm the trial court with respect to GLōB's finally liquidated entries.

As an interim measure during its investigation, Customs should have suspended liquidation for entries that were entered on or after the date on which separate investigations of the Appellants were initiated—May 7, 2019—and extended the period for liquidation for all unliquidated entries that were entered before May 7, 2019. *See* J.A. 403–04; 19 U.S.C. § 1517(e). Of the seventeen entries subject to this appeal, the twelve entries discussed above were properly suspended during the investigation; however, five were liquidated, as conceded by the Government, "evidently in error." J.A. 17. GLōB, the importer of two of the five entries which were not suspended, protested the erroneous liquidations. J.A. 14, 17. But after Customs denied the protests, GLōB failed to appeal the denials. J.A. 17. The trial court found that, because of this failure to timely appeal the protest denials, "those liquidations bec[ame] final and conclusive," regardless of the error. J.A. 18 (quoting *United States v. Am. Home Assur. Co.*, 789 F.3d 1313, 1323 (Fed. Cir. 2015)); *see also* 19 U.S.C. § 1514(a). Thus, the trial court concluded it did not have subject matter jurisdiction to review Customs' determinations as to those finally liquidated entries. J.A. 18–19.

The trial court had earlier advised GLōB of an alternate avenue to preserve its rights: by timely filing an action under 28 U.S.C. § 1581(a) contesting Customs' denial of its protest. J.A. 18 n.7, 530–31. The trial court has limited jurisdiction to review timely protested denials under 28 U.S.C. § 1581(a); *see also* 19 U.S.C. §§ 1514(a), 1514(c). Section 1514(a) of Title 19 provides a statutory remedy for erroneously liquidated entries during an investigation, stating "any clerical error, mistake of fact, or other inadvertence . . . adverse to the importer" regarding "the liquidation or reliquidation of an entry . . . shall be final and

conclusive . . . unless a protest is filed . . . or unless a civil action contesting the denial of a protest . . . is commenced" before the trial court. Here, GLōB properly protested the erroneous liquidations to Customs. But after Customs denied those protests on March 9, 2020, GLōB failed to timely appeal or contest the denial of these protests. J.A. 17. The statutorily authorized 180-day deadline to appeal the denial of protest passed during the pendency of this case before the trial court. J.A. 17; *see also* 28 U.S.C. § 2636(a)(1). The erroneous liquidations thus became "final and conclusive" under 19 U.S.C. § 1514(a), such that GLōB can no longer bring a claim under § 1581(a). To the extent GLōB is challenging the evasion determination to attain reliquidation of its finally liquidated entries, its only avenue for attaining that relief was under § 1581(a). That avenue is now foreclosed due to GLōB's failure to timely appeal the denial of its protest of liquidation and the subsequent final liquidation of those entries.

Most of the caselaw raised by Appellants in support of finding jurisdiction over the finally liquidated entries is unavailing. For example, both *Shinyei Corporation of America v. United States*, 355 F.3d 1297 (Fed. Cir. 2004), and *American Signature, Inc. v. United States*, 598 F.3d 816 (Fed. Cir. 2010), address how to apply 19 U.S.C. § 1514 in the context of liquidations where Customs is acting in a ministerial capacity implementing allegedly erroneous instructions from Commerce. *Shinyei Corp.*, 355 F.3d at 1311–12; *Am. Signature,* 598 F.3d at 829. Moreover, in a later case determining an importer was not entitled to mandamus to compel a refund of AD duties on entries that had been finally liquidated, we clarified the importance that "in *Shinyei* the importer diligently pursued its rights throughout by, among other things, filing a mandamus action before its entries were liquidated." *Mukand Int'l, Ltd. v. United States*, 502 F.3d 1366, 1370 (Fed. Cir. 2007). Importer Mukand was not entitled to mandamus compelling a refund of AD duties on finally liquidated entries where

"adequate alternative remedies [were] available to it[,] but [it] did not take advantage of those remedies in a timely fashion." *Id.* Like Mukand, GLōB had ample time to appeal its protest denials of the liquidated entries. The trial court even alerted GLōB of an alternate avenue to appeal the denial of its protest under 28 U.S.C. § 1581(a) after it failed to timely appeal the denial under 19 U.S.C. § 1514. J.A. 531. Accordingly, even under the caselaw cited by Appellants, GLōB's failure to preserve its rights by timely filing an appeal barred the trial court's jurisdiction under § 1581(a) to review the finally liquidated entries.

After the trial court issued its decision and during the pendency of this appeal, this court recognized the availability of jurisdiction under a separate provision, 28 U.S.C. § 1581(c), to review the propriety of an evasion determination by Commerce irrespective of whether the entries subject to the determination had been finally liquidated. *See Royal Brush Mfg., Inc. v. United States.* 75 F.4th 1250 (Fed. Cir. 2023). *Royal Brush* acknowledged the general principle that "once liquidation occurs the trial court is powerless to order the assessment of duties at any different rate." *Id.* at 1256 (citing *SKF USA, Inc. v. United States*, 512 F.3d 1326, 1328 (Fed. Cir. 2008), and *Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed. Cir. 1983)). Nonetheless, *Royal Brush* concluded that the trial court had jurisdiction under § 1581(c) to review the evasion determination itself even where the merchandise subject to the determination had been finally liquidated. *Id.* That decision, rendered after the trial court's decision here, is binding and mandates a conclusion that jurisdiction in this case would have been proper under § 1581(c) (but still unavailable under § 1581(a)).

In *Royal Brush*, the question was one of mootness: whether the importer's failure to protest liquidation of entries rendered its challenge to the evasion determinations of finally liquidated entries moot. *Id.* Under the facts of that case, we found that mootness had not been

established. But in doing so, we clarified the nature of the challenge brought by importer Royal Brush: "Royal Brush did not bring a challenge to a liquidation determination; it brought a challenge to an evasion determination pursuant to the statute specifically authorizing such challenges. That statute does not require a liquidation protest as a condition of review." *Id.* We thus declined to find Royal Brush's case moot with regard to the evasion determinations, despite the claims raised involving finally liquidated entries. *Id.* That distinction between a challenge to the evasion determination itself under § 1581(c) and the final liquidation decision under § 1581(a) is central to *Royal Brush*'s holding because, as it and our prior precedent recognize, courts do not possess jurisdiction under § 1581(a) to order reliquidation of already finally liquidated entries. Thus, while the trial court properly concluded that it did not have jurisdiction under § 1581(a) to review Customs' evasion determinations concerning entries that had been finally liquidated, it erred because it did not consider § 1581(c).

Despite that error, we need not remand this case. The trial court itself noted that to the extent it possessed jurisdiction, GLōB's motion for judgment on the agency record would also be denied for the same reasons stated for denying the motion for judgment on the agency record of the other Appellants' entries. J.A. 19 n.9. We thus affirm the trial court with respect to GLōB's finally liquidated entries for the same reasons we affirmed the trial court's affirmance of Customs' decisions regarding the non-finally liquidated entries: Customs' evasion determinations were in accordance with law and were independently supported by substantial evidence.

V

We have considered the remainder of Appellants' arguments and find them unpersuasive. Because we conclude that the trial court had jurisdiction to review the evasion determinations of all entries at issue in this appeal, did not

act arbitrarily, capriciously, nor abuse its discretion, and properly found substantial evidence support for all of Customs' evasion determinations, we affirm.

**AFFIRMED**